No. 30,013.

THE STATE OF KANSAS, *Appellee*, v. O. D. (PETE) IRWIN, *Appellant*.

(300 Pac. 1098.)

Opinion filed July 3, 1931.

*W. H. Foulke* and *L. S. Dewey*, both of Joplin, Mo., for the appellant.

*Roland Boynton*, attorney-general, *R. O. Mason*, assistant attorney-general, *Marc C. Boss*, county attorney, and *Forrest D. Smythe*, assistant county attorney, for the appellee.

The opinion of the court was delivered by

SLOAN, J.: The defendant was convicted of manslaughter in the first degree. He appeals.

The facts are these. Charles Gibbons for some time prior to May 24, 1930, operated a lunch stand on Seventh street in the city of Galena. Some time prior to this date Gibbons had quarreled with Ralph Price and there was bad feeling between them. The defendant had been acquainted with Gibbons for about three years prior to the date mentioned and had worked for him at different times during the period of his acquaintance. He and his wife had been working at the lunch stand for about a week prior to this date. It was a part of defendant's employment to drive the Gibbons' car. On the afternoon of May 24, 1930, the defendant and Gibbons started for Joplin in the Gibbons' car. As they reached the corner where they turn on highway 66 for Joplin, Gibbons, according to the defendant, "told me to swing around to the other side of the street as there was a guy he wanted to see. . . . He said to stop in front of the store . . . and said, 'I'll be back in a minute.'" The defendant stopped the car near an ice truck standing in front of the Williams store, where Gibbons got out, and the defendant drove about fifty to seventy-five feet to the south and stopped the car near and parallel to the curb, waiting at the wheel with his motor running and the door open. Price was working on the ice truck and as Gibbons alighted from the car he drew two guns. When Price

saw him he ran into the store, calling for help. Gibbons followed and fired three shots into his body. He walked out of the store with his guns in his hands, to the car, returning the guns to their holsters as he entered the car. The instant Gibbons entered the car it drove south and turned west on Seventh street to the Gibbons lunch stand, where the defendant got out, went in the lunch stand and came back with his wife and suitcase.

The defendant's story is that he did not see Price and did not know who Gibbons expected to see when he left the car, nor that he had his guns with him until he returned to the car with a gun in his right hand; that he heard an explosion but thought it was a back-fire of a car or truck; that Gibbons directed him to drive back to the lunch stand and that he then told him to get his wife and money. When he hesitated Gibbons said: "I mean business; hurry up." He went in the lunch stand, got his wife and the money.

"Q. Did you get anything else? A. That is all, a suitcase.

"Q. Your wife brought a suitcase out? A. Yes, sir.

"Q. You took time to get a suitcase and pack it up and bring it along. A. No, sir; the suitcase was already packed with some of her clothes in it.

"Q. You brought that suitcase out with you? A. She brought it out.

"Q. And you put that in the car? A. Yes."

They drove west to the Military road and turned south, and the defendant relates the following:

" 'Where are you going, Charlie?' and he answered, 'To Arkansas.' Then he said, 'Turn around here and go north.' They went north, took the Coal Valley road up to some people that Gibbons knew there in the north part of the county; that he didn't know them himself, but learned that the name was Finn and Wilson. That they drove into the yard and Gibbons called them out to the car and told them he was in a jam. He said, 'I guess I was a little mad and got into this trouble and didn't know just what I was doing.' In about forty minutes they went to another place two miles north. They stayed there till Tuesday and then got the news. 'Up to this time my wife and I had not learned what had actually happened. I finally got hold of a newspaper. . . . The papers stated that there were mobs out.' He didn't want to come back until he felt like he had some protection and after things had cooled off a little. He went to Burke, Idaho, then to Spokane and then to Phoenix, Ariz., then to his sisters' home."

After staying at his sisters' for a few days he wired the sheriff at Galena of his whereabouts and was returned for trial. The defendant knew Price and says there was no feeling between them. He knew, however, that there had been trouble between Gibbons and Price, but thought their quarrel had been fixed up.

C. H. Parker testified that on the day before the killing the defendant came to his house.

"He was greatly excited; said witness had better talk with Charlie Gibbons; that he was on another tear and going to kill Ralph Price. 'I stated to him that I didn't believe I would talk to him, and Irwin then went away.'"

The defendant denies this conversation.

The sole question urged by the appellant is that the evidence is insufficient to support the verdict, and that the court erred in refusing to instruct the jury to find the appellant not guilty. He insists that the evidence shows that the appellant and the deceased were friends and there was no reason for his taking part in the murder.

The law of this state is established, both by statute and the decisions of this court, that one who counsels, aids or abets in the commission of any offense, may be charged, tried and convicted in the same manner as if he were principal. (R. S. 62-1016; *State v. Patterson*, 52 Kan. 335, 34 Pac. 784.) The statute modifies the common-law rule and does away with the distinction between the principal and accessories before the fact, and each of the participants in the crime are tried independently of each other.

The appellant in this case was charged with first-degree murder. That an atrocious murder was committed by Gibbons is not disputed. The question, therefore, which the jury was called upon to decide was whether the appellant participated in the crime. The jury apparently believed the statement made by the witness, Parker, that the defendant had told him the day before the crime that Gibbons intended to kill Price, and the controverted questions of fact which followed were determined by the jury against the appellant.

The jury was justified, considering the evidence and especially the movements of appellant and Gibbons immediately before and after the killing, in finding that the appellant knew that Gibbons had his guns and was looking for Price with intent to kill; that he saw Price on the ice truck and while Gibbons was committing the murder he was waiting to aid and did aid in his escape. The fact that the appellant's wife was at the lunch stand with her suitcase packed is a strong circumstance indicating that the appellant anticipated that an escape would be necessary, and it is not easy to believe that the appellant did not learn of the murder until he read about it in the paper.

The appellant does not complain of any irregularities in the trial, or the instructions given to the jury by the court, and this court finds no reason for interfering with the conclusion of the jury expressed in the verdict and approved by the court.

The judgment is affirmed.