No. 38,975

State of Kansas, *Appellee*, v. Harry Sharp, *Appellant*.

(258 P. 2d 306)

Opinion filed June 6, 1953.

*Keith Martin,* of Mission, argued the cause and was on the briefs for the appellant.

*Earl E. O'Connor,* special prosecutor, of Olathe, argued the cause, and *Harold R. Fatzer,* attorney general, *Paul E. Wilson,* assistant attorney general, *James H. Bradley,* county attorney, and *James B. Pearson,* assistant county attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Price, J.: This was a prosecution for the larceny of an automobile in violation of G. S. 1949, 21-103, which in substance provides that one who steals property in any other state and brings the same into this state may be convicted and punished for larceny in the same manner as if such property had been stolen within this state. Defendant was convicted and has appealed.

The evidence established substantially the following facts:

One Parry, a resident of Kansas City, Jackson County, Missouri, possessed a black 1950 Ford two-door automobile. It was owned by the company by which he was employed and was used by him in the business. The motor number of this car was BONR-174515. It was equipped with a radio, heater, radio antenna on the right side just in front of the door and windshield, and windshield washers. It was described as being in excellent condition. This car was stolen from in front of Parry's place of residence some time between September 28 and October 1, 1951. He immediately reported the theft to the Kansas City, Mo., police department.

On or about October 13, 1951, defendant and one Gustin, his brother-in-law, purchased from an auto-wrecking company in Kansas City, Kan., a light green or light gray 1950 Ford two-door automobile. The car was in a badly wrecked condition and also had been damaged in the 1951 flood. One Mize loaned defendant and Gustin some money toward the purchase price. The certificate of title was made out to defendant. The motor number of this car (hereinafter referred to as the flood car) was BOKC-144903. It was towed to Gustin's residence in Johnson county. Defendant suggested that it be fixed up and repaired, but the idea was soon abandoned and defendant told Gustin to go ahead and wreck it and do whatever he pleased with it and that all he (defendant) wanted was the title to it. The motor, transmission and running gears were used to make a "hot rod" and the other parts were sold for junk.

About ten days after the flood car was purchased defendant drove a black 1950 Ford two-door automobile to Gustin's residence and asked the latter to paint it. Gustin and Mize painted it a red color. This car was described as being equipped with a radio, heater, radio antenna located on the right side just in front of the windshield, windshield washers, and as being a "pretty clean car." It is to be noted this description tallies with the description of the car stolen from Parry a short time before. In the process of painting this black Ford red Gustin and Mize covered the chrome on the front parking lights and around the windshield and radiator with a masking tape. The chrome on top of the hood and on the side of the car and tail lights was removed. There were no license plates on the car at the time it was painted.

Shortly after the car was painted red defendant brought a set of Johnson county license plates (JO-26410) out to Gustin's residence and told him to put them on the car. The county treasurer's records showed that on October 16, 1951, a 1950 Ford two-door, motor number BOKC-144903, was registered in the name of defendant and 1951 license plates (JO-26410) were issued to him. It is to be noted that this motor number was the motor number of the flood car. The red car was permitted to remain at Gustin's home and defendant told him he was trying to sell it. On November 13, 1951, defendant went to a Kansas City bank to obtain a loan on the car. He presented to the cashier of the bank a certificate of title to a 1950 Ford two-door, motor number BOKC-144903, registered in his

name. The loan was approved and defendant received a net sum of $850.

Mize testified that he last saw the red Ford at Gustin's home in January, 1952. Gustin stated the last time he saw the car it was in possession of defendant. On January 20, 1952, defendant reported to the Kansas City, Mo., police department that his red 1950 Ford two-door, motor number BOKC-144903, with Johnson County license plates (JO-26410), was stolen from a parking lot in Kansas City, Mo. He told the officers the car had been slightly damaged when he bought it, that he had repaired it himself, and that it was mortgaged to the named Kansas City bank.

Early the next morning Johnson county officials recovered a 1950 Ford two-door car that had been burned. The motor number of this car was BONR-174515, the same as the motor number of the car reported stolen from Parry some three or four months previously. Its equipment, such as heater, radio antenna, windshield washers, and so forth, corresponded to that which was on the stolen Parry car, and also on the black Ford two-door car which defendant had driven to Gustin's home the previous October, and which had been painted red. The general over-all surface of this burned car appeared to be of a red color. Underneath the front parking lights the surface was black, while underneath the chrome strip on top of the hood the surface was red. The evidence showed that one of its fenders, which had been removed, had been painted red or maroon over black. There was expert testimony to the effect the red paint from the paint can used by Gustin and Mize in painting the black 1950 Ford two-door car was of the same metallic constituency as the surface paint on the burned automobile. Defendant admitted to the officers that the burned car looked like the car he had reported as stolen, and Gustin and Mize admitted that it appeared to be the same car they had painted a red color.

In other words, the evidence established that defendant used the certificate of title and motor number of the flood car to obtain Johnson county license plates; that he caused those plates to be attached to the car which he had had painted red; that he obtained a loan on the latter car on the strength of his certificate of title to the flood car; that he later reported the red car as having been stolen from him—giving to the officers at the time the motor number of the flood car—and that when it, the red car, was recovered the next morning in a burned condition it was found to have the motor num-

ber of the car which had been stolen from Parry, and was identified as being the same car which defendant had had painted red.

Defendant first complains the court erred in admitting the testimony of Gustin (his brother-in-law) given at the preliminary examination, the contention being that due diligence on the part of the state in attempting to obtain the presence of the witness had not been shown. That such due dilligence is a prerequisite to the admission of such testimony is conceded. We will not encumber this opinion with a detailed recital of the efforts on the part of the state to secure the presence of this witness. The record shows that at least three subpoenas and a writ of attachment for him were issued—all without success. The court heard testimony by the undersheriff as to the efforts of that office to locate the witness. Under the circumstances it was not error to admit the testimony previously given.

"When the trial court is satisfied from the evidence that the State has made every reasonable effort to procure the attendance of a witness and is unable to do so, it is not error for the court to admit on the trial of the action the testimony of such witness given at a preliminary examination." (*State v. Streeter*, 173 Kan. 240, 241, 245 P. 2d 1177.)

It is next contended the court committed error in failing to order a mistrial when, following a lengthy objection by defendant to the admission of Gustin's testimony given at the preliminary examination, the court commented that perhaps he (defendant) should have subpoenaed him.

We think defendant places undue emphasis and importance on the remark. In fact, it was somewhat "invited" by the substance and nature of the objection. It is not to be taken as a suggestion or insinuation that it was incumbent upon defendant to "assist" the state in the prosecution of the case.

Defendant's next complaint is the court erred in giving instruction number four, which in substance told the jury that unexplained possession of personal property, proved recently to have been stolen, raises a prima-facie presumption that the possessor is the thief. The contention is that such an instruction is improper in the absence of evidence showing that the possession is both recent and exclusive.

The highlights and over-all picture of what the evidence established have already been recited and will not be repeated. As applied to the facts before us we think the words "recent" and

"exclusive" are relative terms, and the contention for a literal application of their definitions cannot be sustained. The instruction, read in conjunction with other instructions, and particularly the one on reasonable doubt, was proper. For a discussion of the principle involved see *State v. Leigh*, 166 Kan. 104, 199 P. 2d 504.

It is further contended the court erred in refusing to give a requested cautionary instruction concerning the testimony of an accomplice, and in giving certain instructions with reference to counseling, aiding and abetting. No purpose would be served by detailing defendant's argument in support of his contention. In the light of the evidence the court did not err with respect to instructions refused or given.

And the same is true with respect to complaints concerning alleged error in the admission of evidence. An examination of each complaint discloses it to be without substantial merit.

And, finally, it is argued the court erred in overruling defendant's motion for a directed verdict and the motion for a new trial, the contentions being there was a lack of sufficient, competent evidence to sustain the verdict, and that because of all the reasons heretofore mentioned defendant should have been granted a new trial.

Neither of these contentions can be sustained. The mass of evidence, both direct and circumstantial, if believed by the jury, was amply sufficient to support the verdict of guilty. What has heretofore been said may well apply to the ruling on the motion for a new trial. A careful examination of the record discloses nothing approaching reversible error and the judgment of the lower court is therefore affirmed.