410 So.2d 905 (1982)
In the Matter of James Ronald CARTEE.
Civ. 3057.
Court of Civil Appeals of Alabama.
February 24, 1982.
Thomas Troy Zieman, Jr. of Miller, Hamilton, Snider & Odom, Mobile, for appellant.
No brief for appellee.
WRIGHT, Presiding Judge.
This is an appeal from an involuntary commitment order rendered November 17, 1981, by the Mobile County Probate Court against James Ronald Cartee. The cause arose under the following pertinent facts:
Curtis Cartee petitioned for involuntary commitment of his brother Ronald, appellant herein, on October 14, 1981. A guardian ad litem was appointed for appellant. On the date of the first scheduled "probable cause" hearing, Ronald was unavailable, and the hearing was continued to October 22, 1981. Once again Ronald had not been served and was not present. The hearing was reset for November 10, 1981. After the continuance on October 22, Curtis Cartee signed a criminal complaint against his brother, apparently for the purpose of causing his arrest and insuring his presence at the hearing. As a result, Ronald was arrested and spent four and one-half days in the county jail prior to the November 10, 1981, "probable cause" hearing.
At that hearing, the probate court found "probable cause" and ordered that appellant be taken to the psychiatric ward of the University of South Alabama Medical Center in Mobile. He was there examined by a clinical psychologist and found to be a "paranoid schizophrenic with acute exacerbation." Following a hearing on the merits on November 17, 1981, the probate court found that:

*906 "Both sides having rested, the Court finds that James R. Cartee is psychotic; that there is treatment available for his condition; that confinement is the least restrictive alternative available; that he has committed overt acts. The Sheriff's office will be directed to take him up to the hospital at Mount Vernon."
From that order Ronald appeals through his guardian ad litem, Thomas Troy Zieman, Jr., and does so in forma pauperis.
The evidence admitted in the probate court revealed the following:
Ronald Cartee is forty years old and a former air traffic controller now on disability. He lives in his own apartment and takes care of his personal needs. At times he appears to have worn the same clothes for several days. In the six months prior to the hearing,[1] he told his brother that he and his oldest stepson, living in New Orleans, had agreed to meet on a street in Mobile for a "fight to the death." If he won the fight, the mayor of Mobile would be there to give him the keys to the city. He wanted his brother to be present and share in his awards. On occasions he tried to get his brother Curtis to "go partying" with him and on one occasion challenged his brother to fight when he refused. He told his brother that he was "really going to pay now." His brother testified that Ronald "acted hostile" toward him and his wife as well as their mother and sister. Such hostility was apparently verbal and attitudinal and not exhibited through overt acts. Ronald also made strange remarks.
Section 22-52-10 Code (1975) clearly sets out the findings of fact required for involuntary commitment. The findings must be based on "clear, unequivocal and convincing evidence." The required findings are:
(a) (1) That the person sought to be committed is mentally ill; and
(2) That as a consequence of the mental illness the person poses a real and present threat of substantial harm to himself or to others; and
(3) That the threat of substantial harm has been evidenced by a recent overt act; and
(4) That treatment is available for the person's mental illness or that confinement is necessary to prevent the person from causing substantial harm to himself or to others; and
(5) The commitment is the least restrictive alternative necessary and available for treatment of the person's mental illness....
(b) If any such element be unproved, the probate judge shall deny the petition and discharge the subject of the petition sine die....
The probate court's order tracked the Code provision almost verbatim. The issue on appeal is whether the evidence relied on to support those findings was "clear, unequivocal and convincing." We find the evidence presented to show that appellant posed a "real and present threat of substantial harm to himself or to others" (especially as "evidenced by a recent overt act"), failed to meet the standard of "clear, unequivocal and convincing" required by the statute. The ore tenus rule does not save the judgment because the undisputed facts do not meet the high requirements of the statute as a matter of law.
The burden of proof for involuntary commitment in Alabama is indeed a heavy one, and is higher than has been required constitutionally for due process purposes. See, Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). However, as we noted in Walker v. Dancer, 386 So.2d 475 (Ala.Civ.App.1980) "our legislature has spoken and we are without authority to alter the statute since states may include, but are not required to adopt, the higher `unequivocal' standard." 386 So. at 478. The evidence considered in the probate court fails to meet that standard. See, Lynch v. Baxley, 386 F.Supp. 378 (M.D.Ala. 1974).
Since the evidence is insufficient to meet the "clear, unequivocal and convincing" standard, this cause is due to be reversed.
*907 In accordance with §§ 22-52-14, 15 and the request of attorney for James Ronald Cartee for a grant of attorney's fee on appeal, a fee of $300 is hereby awarded and assessed against petitioner, Curtis Cartee, together with all costs. This matter is reversed and remanded to the probate court of Mobile County for consideration of assessment of an attorney fee for the appointed attorney for the services performed in that court and any other matter properly brought before the court.
REVERSED AND REMANDED WITH DIRECTION.
BRADLEY, J., concurs.
HOLMES, J., concurs specially.
HOLMES, Judge (concurring specially).
The majority is undoubtedly correct in its conclusion that the appellee failed to meet the burden of proof as set out in section 22-52-10. Consequently this court has no choice but to reverse and I concur in the reversal. I differ from the majority, however, in that I believe this case requires more than a mere reversal. It is my position that the case should be reversed and remanded to the probate court for a determination based upon the considerations as elucidated below.
This special concurrence is spawned by the probate court's refusal to allow testimony of events which occurred more than six months prior to the hearing. Apparently the probate court was of the opinion that this limitation was required by the word "recent" as used in section 22-52-10(a)(3). I have been, however, unable to find any language in the statute or cases which requires such a limitation on the taking of evidence in involuntary commitment proceedings.
I will first consider the statute itself. The language used in section 22-52-10 is taken almost verbatim from the opinion of the United States District Court in Lynch v. Baxley, 386 F.Supp. 378 (M.D.Ala.1974).[1] In discussing the recent overt act requirement the court stated:
To confine a citizen against his will because he is likely to be dangerous in the future, it must be shown that he has actually been dangerous in the recent past and that such danger was manifested by an overt act, attempt or threat to do substantial harm to himself or to another.
386 F.Supp. at 391. The court made no attempt beyond the quoted language to explain or define "recent."
It is not surprising that the federal district court failed to define "recent" for few courts have attempted to formulate a concise definition of "recent." In an early case our supreme court said that "recent" is "incapable of exact or precise definition." White v. State, 72 Ala. 195, 200 (1882). Instead of defining "recent," most courts have simply described "recent" as a relative term whose exact definition depends upon the facts and circumstances of each separate case. White v. State, supra; Brown v. State, 262 Ark. 298, 556 S.W.2d 418 (1977); State v. Sharp, 174 Kan. 672, 258 P.2d 306 (1953); State v. Giordano, 121 N.J.L. 469, 3 A.2d 290 (1939). Absent a consideration of the facts and circumstances of each separate case, "recent" has no meaning.
The six month limitation on receipt of evidence that was imposed by the probate court in this case is not consonant with the law as discussed above. The six month limitation was an attempt by the probate court to define "recent" without considering the totality of the circumstances. I would thus remand the case to the probate court to allow the parties to introduce further pertinent testimony, if any exists, of events or actions which occurred beyond the six month limitation. With the full circumstances of the case before it, the probate court may then properly determine if the appellee has met his burden of proof under section 22-52-10, particularly whether "the threat of substantial harm has been evidenced by a recent overt act."
*908 I emphasize that I do not mean to say that an act or event which occurred seven months, or eight months or even four months prior to the hearing is necessarily recent as contemplated by the statute. All I mean to say is that what acts or events are "recent" as contemplated by the statute can be determined only after considering the facts and circumstances of the case in their entirety.
I would further note that, to me, the record clearly reveals the appellant is mentally ill and is in need of treatment. Upon proper consideration by the probate court perhaps appropriate treatment will be forthcoming.
NOTES
[1] Due to the requirement of a recent overt act in the statute, the probate court refused to allow testimony of events more than six months prior to hearing.
[1] In Lynch v. Baxley the federal district court held that Alabama's prior involuntary commitment statute was unconstitutional.