This is an appeal from an involuntary commitment order rendered on May 24, 1989 by the Lauderdale County Probate Court against Benjamin Franklin Riley IV.
John C. Harris, Jr., and Steve R. Graham, general conservator and district attorney, respectively, for Lauderdale County, filed a petition for the involuntary commitment of Riley, the appellant herein. A guardian ad litem was appointed for Riley.
After a hearing, the probate court found that Riley is mentally ill, poses a real and present threat of substantial harm to himself or others, that there is treatment for *Page 1038 
his illness and confinement is the least restrictive alternative, and that the evidence was clear, unequivocal, and convincing as to these findings. The court ordered Riley committed to the State Department of Mental Health.
On appeal Riley contends that the evidence was not sufficient to meet the statutory requirements under § 22-52-10, Code 1975.
Initially we note that this is not the first time that Riley has been involuntarily committed, see, Riley v. State,534 So.2d 322 (Ala.Civ.App. 1988), and there is no dispute concerning the mental illness suffered by Riley. In fact, the testimony of Dr. Joseph Glaister, a licensed psychiatrist, reveals that Riley suffers from chronic severe paranoia and schizophrenia. However, there is no indication of why Riley was at liberty after the previous commitment in 1987 or 1988.
Riley is approximately forty years old and resides in a home with his eighty-three-year old father. Some months prior to the hearing Riley's father was released from the hospital and was being cared for by Riley, with the assistance of a physician and the Department of Human Resources, Adult Protective Services. In February and March 1989 Riley refused to allow a DHR social worker and the physician to enter Riley's home for the purpose of examining Riley's father. As a result, DHR filed a petition (which was granted) to allow medical personnel to forcibly enter the Riley residence to check on Riley's father. Aside from statements of the DHR social worker that the Riley residence was unclean, there is nothing in the record that indicates Riley was neglecting, or posed a threat of harm to, his father. In fact, there was evidence that the father was recovering under the care of Riley. Further, Riley testified that his father specifically told him he did not want to be examined again by the physician. Subsequently, Riley obtained another physician for his father.
A neighbor of Riley, Mrs. Warren, testified concerning an incident involving Warren's dog. When Riley was walking up the street and passing the Warren home, the dog began barking "ferociously" at Riley. In response, Riley kicked at the dog, stating he was going to "kill the damn dog." Mrs. Warren testified she had lived in the neighborhood for about eighteen years, had known Riley and Riley's family, and stated that she had never seen Riley upset before, nor had she ever observed any violent behavior, or threats of violence, by Riley. He did not attempt to "kill the damn dog," but told Mrs. Warren she was in violation of the city leash law.
Testimony of a policeman indicates that Riley has been observed on the streets at various times, approaching people and asking them bizarre questions, and writing down the license tag numbers of vehicles as they passed by.
Another witness testified that she observed Riley walk out into the middle of an intersection of streets and stand there as several cars passed on either side of him. She stated that there was "nothing alarming" about it and the traffic was not heavy.
It also appears that Riley has refused to take his medicine which is prescribed to alleviate some of the manifestations of his paranoia and schizophrenia. Riley stated that he suffered severe reactions from the medicine and thus he refused to continue to take it.
Section 22-52-10(a) codifies the elements which must be established before a person may be involuntarily committed for treatment of a mental illness. The probate judge must deny the petition if any of those elements are unproven. See, §22-52-10(b), Code 1975.
 "§ 22-52-10. Findings by probate judge; grant or denial of petition for commitment; confinement when treatment for mental illness unavailable.
 "(a) If at the final hearing upon a petition seeking to commit a person to the custody of the state department of mental health or such other public facility as the court may order, the probate judge, on the basis of clear, unequivocal and convincing evidence, shall find:
 "(1) That the person sought to be committed is mentally ill; and *Page 1039 
 "(2) That as a consequence of the mental illness the person poses a real and present threat of substantial harm to himself or to others; and
 "(3) That the threat of substantial harm has been evidenced by a recent overt act; and
 "(4) That treatment is available for the person's mental illness or that confinement is necessary to prevent the person from causing substantial harm to himself or to others; and
 "(5) That commitment is the least restrictive alternative necessary and available for treatment of the person's mental illness;
 then upon such findings, the probate judge shall enter an order setting forth his findings, granting the petition and ordering the person committed to the custody of the Alabama state department of mental health or to such other public facility as the court may order." (Emphasis supplied.)
Riley contends that the evidence respecting elements (2) and (3) enumerated above was not "clear, unequivocal and convincing."
 "The probate judge personally heard all of the evidence at the commitment hearing. The usual presumption of correctness applies if the evidence supports his findings. We are not authorized to disturb his factual findings contained in the final judgment unless he was clearly and palpably wrong. These rules of law, however, must be applied in joint consideration with the high burden of proof required in cases of this nature."
Walker v. Dancer, 386 So.2d 475, 477 (Ala.Civ.App. 1980).
The burden of proof upon a petition for involuntary commitment is heavy and is understood to be higher than has been required for constitutional due process purposes. See,Matter of Cartee, 410 So.2d 905 (Ala.Civ.App. 1982).
After careful review of the evidence, we find that the evidence is insufficient to meet the clear, unequivocal, and convincing standard. There is scant evidence relating to the "substantial harm" Riley "threatens to himself or others." Also, the "recent overt acts" committed by Riley — refusal to let DHR enter his home and kicking at a dog that was barking "ferociously" at him — do not reflect any real and present threat of substantial harm to himself or others. It would appear that such acts could have been deemed "eccentric" as easily as abnormal. The conclusion that such behavior, in and of itself, rises to the clear, unequivocal, and convincing standard is unsupportable.
This case is due to be and is reversed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of section12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
REVERSED AND REMANDED.
All the Judges concur.