CRAWLEY, Judge.
This is an appeal from a judgment of the probate court ordering that Beverly Montgomery be involuntarily committed to the Alabama Department of Mental Health and Mental Retardation (the Department).
Montgomery contends that the evidence was insufficient to support the commitment order. We disagree.
Sections 22-52-1.1 through -15, Ala.Code 1975, govern the procedure for involuntary commitments of mentally ill persons. Section 22-52-10.4(a) provides the following:
“A respondent may be committed to inpatient treatment if the probate court finds, based upon clear and convincing evidence[,] that: (i) the respondent is mentally ill; (ii) as a result of the mental illness the respondent poses a real and present threat of substantial harm to self and/or others; (iii) the respondent will, if not treated, continue to suffer mental distress and will continue to experience deterioration of the ability to function independently; and (iv) the respondent is unable to make a rational and informed decision as to whether or not treatment for mental illness would be desirable.”
The evidence presented at the commitment hearing established that, on June 23, 1996, Birmingham police officer Patrick Metcalf observed Montgomery running into the road, stopping traffic, and throwing rocks at cars. Ms. Montgomery told the court that she thought the cars were trying to run over her. She said that the cars were being driven by members of the Ku Klux Klan and that the Klan members were calling her by a derogatory racial term.
Officer Metcalf took Montgomery to the emergency room at UAB Hospital. There, they were met by Officer Bennie Barnes, a community service officer with the Birmingham Police Department. Officer Barnes testified that Ms. Montgomery was very combative in the emergency room. She attacked *748 Barnes by “butt[ing] her head” at the officer. She also attacked a nurse. As the nurse was giving Ms. Montgomery an injection, Montgomery removed the needle from herself and injected it into the nurse. Then, when the nurse tried to place an IV in Ms. Montgomery’s arm, Montgomery “sat straight up [and], came off the table, [and] Officer Met-calf had to mace her.”
Dr. James N. Hall, Montgomery’s treating-physician at UAB hospital, gave his opinion that Montgomery suffered from a recognized mental illness, specifically a delusional disorder of the persecutory type, “a form of paranoid psychosis ... similar to schizophrenia.” Dr. Hall testified that treatment was available for Ms. Montgomery’s illness but that, without treatment, Montgomery would get progressively worse. With anti-psychotic medications and inpatient secure care, Ms. Montgomery had a 50 percent chance of a full recovery, according to Dr. Hall. Dr. Hall stated that outpatient treatment would not be successful because Ms. Montgomery had a lack of insight into her mental illness and had refused treatment.
Ms. Montgomery denied that she was mentally ill and stated that there was a conspiracy against her to “give [her] a stroke by electronic means.” She said that she had reported the conspirators, who she said were a preacher and two deacons from the Guiding-Light Church, to the FBI and the attorney general.
Based on the foregoing evidence, we hold that there was clear and convincing evidence to support the probate court’s order committing Montgomery to the custody of the Department. See Matter of Involuntary Commitment of Marsh, 666 So.2d 12 (Ala.Civ.App.1995); Matter of Lee, 560 So.2d 1084 (Ala.Civ.App.1990); Riley v. State, 550 So.2d 1037 (Ala.Civ.App.1989).
The judgment of the probate court is affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, YATES, and MONROE, JJ, concur.