No. 48,100

STATE OF KANSAS, *Appellee*, v. WILLIAM A. MOTOR, *Appellant*.

(551 P. 2d 783)

Opinion filed June 12, 1976.

*Ted L. Peters*, of Burchfiel & Peters, of Wichita, argued the cause and was on the brief for appellant.

*Christopher A. Randall*, assistant district attorney, argued the cause, *Curt T. Schneider*, attorney general, *Keith Sanborn*, district attorney, and *Robert L. Kennedy, Jr.*, assistant district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, C. J.: This is an appeal from a conviction of burglary in violation of the provisions of K. S. A. 21-3715. The defendant was acquitted of the charge of possession of burglary tools.

Shortly after 3:00 o'clock a. m., June 7, 1974, a report was received by the Wichita Police Department of a burglary in progress at Kilkenny's Pharmacy, 4004 West Central, Wichita, Kansas. Officers Wattenbarger and Dickerson were dispatched to the location. Officer Dickerson covered the front of the building while Officer Wattenbarger went to the rear.

Officer Wattenbarger used his flashlight to check out the back of the buildings and in so doing, he observed movement behind an air conditioner compressor next to the back door of a shop known as Wigs and Fashion by Darlene. He ordered whoever was behind the compressor to come out. The person who came out was the defendant, William A. Motor. A pair of blue rubber garden-type gloves were removed from the defendant's hands. Leonard A. Schmidt was apprehended crouched on the floor in the front of a station wagon parked in a lot adjoining Kilkenny's Pharmacy. Other police officers, who had arrived, apprehended Michael D. White and William D. Killion in the building.

The police investigation revealed that the back door to the wig shop was broken and that a hole had been knocked through the concrete party wall separating the wig shop and Kilkenny's Pharmacy. The Wichita Police Department laboratory investigator found a small sledgehammer, an axe, and a .25 caliber automatic pistol lying on the floor of the wig shop. The investigator also found a .38 caliber revolver under the front seat of the station wagon in which Leonard Schmidt was found.

Other facts will be presented in more detail as we discuss the issues to which they apply.

The defendant first contends the district court erred in permitting the state to endorse William D. Killion as a witness for the reason the defendant was given no notice of the state's intention to do so and he was forced to argue the same without adequate time for preparation and without adequate time to investigate and interview the witness.

It will be remembered that William D. Killion was one of the four individuals apprehended at the scene of the crime. The endorsement was made at the inception of the trial, but before any evidence was received.

The statute providing for endorsing witnesses (K. S. A. 1973 Supp. 22-3201 [6]) reads:

"The prosecuting attorney shall endorse the names of all witnesses known to him upon the information or indictment at the time of filing the same. He may endorse thereon the names of other witnesses as may afterward become known to him, at such times as the court may by rule or otherwise prescribe."

This court had occasion to consider the last sentence of the statute in *State v. Blocker*, 211 Kan. 185, 505 P. 2d 1099, and stated:

"On several occasions this court has considered late endorsements as they related to the foregoing statute [K. S. A. 1971 Supp. 22-3201 (6)] and its

predecessor, G. S. 1949, 62-802. From our decisions the rule has evolved that permission to endorse additional names on the information during trial rests within the sound discretion of the trial court and its ruling will not be disturbed in the absence of abuse—the test being whether the defendant's rights have been prejudiced. . . ." (1. c. 188.)

See, also, *State v. Price*, 215 Kan. 718, 722, 529 P. 2d 85, 88.

In *State v. Poulos*, 196 Kan. 287, 411 P. 2d 689, cert. den. 385 U. S. 827, 17 L. Ed. 2d 64, 87 S. Ct. 63, we further examined the meaning of "prejudice" and stressed the burden of proof to be carried by one objecting to any late endorsement:

"We have also held that endorsement of additional names on an information, even during a trial, rests within the sound judicial discretion of the trial court and where such endorsement has been permitted material prejudice to the rights of the defendant must clearly be shown before it will constitute reversible error. . . ." (1. c. 291.)

It would appear from an examination of the record that the district court was careful to protect the rights of the defendant against prejudice. The record reveals the following with respect to this matter:

"THE COURT: Well, he [Mr. Killion] will be available, as I understand it, 9:00 o'clock in the morning.

"MR. SHERWOOD: That's correct, Your Honor.

"THE COURT: For interview with Mr. Garrity. And in the event, Mr. Garrity, you feel you need any additional time, then we will be glad to give you any appropriate recess necessary to protect the interest of your client.

"So with that then, I can see no prejudice resulting. The endorsement is allowed."

The record does not disclose any request for additional time. We fail to find any prejudice to the rights of the defendant.

The defendant contends the district court erred in admitting into evidence a pair of rubber gloves which were taken from the hands of the defendant at the time of his arrest.

Counsel for defendant viewed the evidence pertaining to the case on two occasions. The gloves had been placed in defendant's boots which had also been taken as evidence, and were not found at the time of counsel's examination. The defendant contends the state was dilatory in telling defense counsel that the gloves had been located. He claims no prejudice. In fact, counsel had ample time to examine the gloves before they were introduced into evidence.

The district court gave counsel for defendant an opportunity to attack the credibility of the state's chain of custody in his case

in chief. The weight of the evidence was a question of fact for the jury.

The defendant further contends the information as filed and upon which the case was tried did not state the offense specifically enough to enable the defendant to prepare his defense.

The defendant would appear to contend the information should have charged him with aiding and abetting the burglary rather than with the commission of the substantive offense. He made no objection before proceeding to trial. He made no attack on the information prior to his conviction. He filed no motion for a bill of particulars as authorized by K. S. A. 1973 Supp. 22-3201. He is hardly in a position to complain at this stage of the proceedings. (*State v. Cory*, 211 Kan. 528, 506 P. 2d 1115.)

Moreover, the defendant's contention is not found under the substantive law. K. S. A. 21-3205 (1) reads:

"A person is criminally responsible for a crime committed by another if he intentionally aid, abets, advises, hires, counsels or procures the other to commit the crime."

This subsection of the revised Kansas Criminal Code took the place of K. S. A. 62-1016 which read:

Any person who counsels, aids or abets in the commission of any offense may be charged, tried and convicted in the same manner as if he were a principal."

The court is of the opinion there is very little, if any, difference in the meaning of the language used in the two sections. In considering the latter section, we held in *State v. Ogden*, 210 Kan. 510, 502 P. 2d 654:

"One who counsels, aid or abets in the commission of any offense may be charged, tried and convicted in the same manner as if he were a principal." (Syl. para. 1.)

The defendant challenges the sufficiency of the state's evidence to support the verdict.

The state's evidence established that the wig shop was in fact burglarized; that the owner, Darlene Thomas, had not given anyone authority to break in the back door and enter her establishment; that a hole had been battered in the party wall joining the wig shop and the pharmacy next door and that two individuals, Michael White and William Killion, were apprehended inside the building. The defendant was found crouching behind an air conditioner compressor located behind the wig shop from which a

window had been broken. When apprehended, the defendant was wearing a pair of rubber gloves. Inside the wig shop, along with the two other men, a sledgehammer, an axe and a pistol were found.

In *State v. Ritson,* 215 Kan. 742, 529 P. 2d 90, the court stated:

"This court has long followed the rule that when a verdict is challenged for insufficiency of the evidence in a criminal case the issue on appeal is not whether the evidence establishes guilt beyond a reasonable doubt, but whether the evidence is sufficient to form the basis for a reasonable inference of guilt when viewed in the light most favorable to the state. The most recent enunciation of the rule will be found in *State v. Platz,* 214 Kan. 74, 519 P. 2d 1097. In determining the sufficiency of the evidence, this court looks only to the evidence favorable to the decision, and if the essential elements of the charge are sustained by any legally admitted evidence the conviction will stand. (*State v. Taylor,* 212 Kan. 780, 512 P. 2d 449.)" (1. c. 744.)

We are of the opinion the evidence amply satisfied the requirements of the rule stated.

Other contentions made by defendant have been examined and found to be without merit. Their discussion would add nothing new or helpful to the case law of this state.

The judgment is affirmed.