No. 50,098

State of Kansas, *Appellee,* v. Sandra J. Goering, *Appellant.*

(594 P.2d 194)

Opinion filed May 5, 1979.

*John F. Jones II,* of the law offices of John F. Jones II, of Newton, argued the cause and was on the brief for the appellant.

*James W. Modrall,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: A jury convicted Sandra Goering of the aggravated kidnapping of Judd Durner (K.S.A. 21-3421); the kidnapping of Rosetta Durner (K.S.A. 21-3420); the aggravated robbery of Judd Durner (K.S.A. 21-3427); burglary of the State Bank of Burrton (K.S.A. 21-3715); the attempted murder of Judd Durner (K.S.A. 21-3301, 21-3401); and the attempted murder of Rosetta Durner (K.S.A. 21-3301, 21-3401). Following sentencing, and the overruling of her post-trial motions, the defendant appeals, contending that the evidence was insufficient to sustain a conviction of the crimes charged, and that the court erred in its instructions, in failing to grant a new trial, in admitting certain exhibits, and in imposing maximum consecutive sentences.

All of the charges arose out of an attempt to rob the State Bank of Burrton, Kansas, on September 17, 1974. Very early that morning, Charles Thach, James Keener, and the defendant, Sandra Goering, drove from Wichita to Burrton, and proceeded to the home of Mr. and Mrs. Judd Durner. Mr. Durner was cashier and managing officer of the bank. Mr. and Mrs. Durner were asleep until Thach rang their doorbell; Mr. Durner came to the door. Thach stated that he had car trouble, and he asked to use the telephone. Upon entering the home, he drew a handgun from behind his back and pointed it at Mr. Durner. Keener, armed with a sawed-off shotgun, entered the home shortly thereafter. Thach and Keener announced that they intended to rob the bank. Durner advised them that all money, except coins, was under a time lock, and that it could not be opened until later that morning. The defendant initially remained outside in the car. Thach went out to get her; he returned alone and said that she was asleep and would not come in. Later, Keener went out and roused the defendant, and she came into the Durner home. She was unarmed. She stood near the door and could see that both Thach and Keener were pointing firearms at Mr. and Mrs. Durner. Thach, Keener and Goering then discussed changing their plan; they would wait until the time lock went off, in order to take the currency. They decided to have Goering take their car out in the country so that the car would not attract attention in town. Thach took Mr. Durner's car keys, and Goering and Thach left. Goering drove Thach's car, and Thach followed in Durner's vehicle. Goering parked out in the country, and remained there in the car; Thach returned to the Durner residence.

Thach, Keener, and the Durners then drove to the bank. Thach and Mr. Durner got out of the car, and Keener said to Thach: "If she comes back without me, the first thing you do is kill him." Thach and Mr. Durner then entered the bank, while Keener drove Mrs. Durner out into the country. Mrs. Durner complained of feeling ill. She got out of the car, flagged down a passing motorist, LaVerne Schrag, and jumped into his car. A high-speed chase followed. Keener fired a shotgun blast at Schrag and Mrs. Durner, but fortunately neither were hit. Schrag finally was able to elude Keener, and he and Mrs. Durner escaped unharmed.

Judd Durner was not so fortunate. Keener returned to the bank and told Thach of Mrs. Durner's escape; the two decided to take some sacks of coins, abandon the currency which was still under time lock, kill Mr. Durner, and leave. Mr. Durner quickly moved into the vault and attempted to close the door, but before the door could close, the shotgun was fired and Durner was seriously injured. Thach and Keener then left the bank, rejoined the defendant at the Thach automobile out in the country, and returned to Wichita.

Defendant first contends that it was error for the trial court to overrule her motions for judgment of acquittal made at the close of the state's evidence, and at the close of all of the evidence, for the reason that the evidence introduced was insufficient to sustain a conviction of the crimes charged. We set forth the rule for the determination of a motion for judgment of acquittal in *State v. White & Stewart,* 225 Kan. 87, Syl. ¶ 13, 587 P.2d 1259 (1978), as follows:

"A trial judge in passing upon a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes guilt beyond a reasonable doubt is a fairly possible result, he must deny the motion and let the jury decide the matter. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion."

It is obvious that the defendant was convicted as an aider or abettor under K.S.A. 21-3205. That statute provides in part:

"(1) A person is criminally responsible for a crime committed by another if he intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime.

"(2) A person liable under subsection (1) hereof is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by him as a probable consequence of committing or attempting to commit the crime intended."

A person is criminally responsible for a crime committed by others if that person *intentionally* aids and abets the others in the commission of the crime. K.S.A. 21-3205; *State v. Edwards,* 209 Kan. 681, 498 P.2d 48 (1972). The element of intent necessary in aiding and abetting may be inferred from circumstantial evidence. In light of the evidence disclosed by the record before us, the jury could well have found that the defendant, knowing of the robbery and murder plans, participated in the scheme as a driver, since she drove, positioned, and stayed in the getaway car until her confederates were ready to leave the area. We hold that the evidence was sufficient to warrant the trial judge's conclusion that a reasonable mind might fairly conclude beyond a reasonable doubt that the defendant was a knowing, voluntary, and intentional participant in the criminal act. On appellate review, the question is not whether the evidence establishes guilt beyond a reasonable doubt, but whether the evidence is sufficient to form a basis for a reasonable inference of guilt on all elements of the crime. *State v. Racey,* 225 Kan. 404, 590 P.2d 1064 (1979). The evidence in the case before us fully justified the trial judge's submitting the case to the jury.

Defendant next contends that the trial court erred in instructing the jury on aiding and abetting, since the defendant was charged only as a principal. These were the only instructions to which objection was made at trial; there, counsel stated:

"[T]he facts and evidence before the Court and jury do not justify the submission of those Instructions at the present time."

We determined this issue adversely to appellant's contention in *State v. Smolin,* 221 Kan. 149, 557 P.2d 1241 (1976). We said:

"By statute and case law this jurisdiction has long held that any person who counsels, aids or abets in the commission of any offense may be charged, tried and convicted in the same manner as if he were a principal. . . . Moreover, defendant's argument that she should have been charged in the information with aiding and abetting the aggravated battery rather than with the substantive offense has been rejected by this court." (p. 152.)

In the case at hand, the defendant was properly charged as a principal, the evidence was sufficient to justify the instructions

given, and the court properly instructed the jury on aiding and abetting.

Defendant next contends that the trial court erred in failing to instruct the jury on lesser included offenses. No such instructions were requested, and we hold that such instructions would not have been justified under the evidence. The defense was that the defendant was not a willing participant in the crimes; therefore, she was either guilty of the crimes charged, as an aider and abettor, or she was not guilty of any offense. We find no error in the instructions given.

Defendant next contends that the trial court erred in denying her motion for a new trial. Appellant argues that, taken in their entirety, the issues raised in her motion for a new trial justified the granting of a new trial. Whether to grant a new trial is a matter of discretion, and a trial court's decision will not be disturbed except by a showing that the discretion was abused. *State v. Bell,* 224 Kan. 105, 577 P.2d 1186 (1978); *State v. Freeman,* 223 Kan. 362, 574 P.2d 950 (1978). We have carefully considered each point addressed in appellant's brief, and find no abuse of discretion. The points argued are, that the evidence was insufficient to support the conviction; that the jury verdicts were inconsistent; that Mrs. Durner "colored her testimony"; that pretrial publicity prejudiced the defendant; and that the instructions were erroneous. We have already covered the sufficiency of the evidence and the propriety of the instructions.

The defendant was found not guilty of the attempted murder of LaVerne Schrag, but guilty of the attempted murder of Mrs. Durner. This arose out of the firing of a shotgun blast at the vehicle in which Mr. Schrag and Mrs. Durner were seated. Even though the verdicts may appear irreconcilable, the conviction will not be reversed on the ground of inconsistency. *State v. McCorgary,* 218 Kan. 358, 366, 543 P.2d 952 (1975), *cert. denied,* 429 U.S. 867 (1976).

With regard to "coloring her testimony," the witness testified that she was bitter at having to appear so many times in both federal and state courts, and having to repeat her story over and over. During vigorous cross-examination, Mrs. Durner acknowledged that it was a very bitter experience, and that her attitude was coloring her testimony. However, there is no indication in the record that the witness testified falsely or that her statements

were made other than in good faith. This may have been a matter for jury argument, but it is certainly not of sufficient import to require reversal or new trial.

As to pretrial publicity, there is no showing here of the articles or news stories which were published, and there is no showing whatsoever of prejudice to the defendant. The burden is upon an appellant to demonstrate prejudice, and as we have often said, media news releases do not per se establish prejudice against a defendant. *State v. Sanders,* 223 Kan. 273, 574 P.2d 559 (1977); *State v. Porter,* 223 Kan. 114, 574 P.2d 187 (1977). The trial court did not err in overruling defendant's motion for a new trial.

Defendant next contends that it was error for the trial court to admit certain exhibits and testimony. The testimony related to the exhibits, all of which we have carefully considered. The exhibits consisted of the pistol and sawed-off shotgun, and photographs of the scene of the shooting, some showing blood and hair of the victim. The only objection posed at trial was on the grounds of relevance. The testimony to which objection is made deals with the exhibits. We conclude that the exhibits were relevant; the State was required to prove the perpetration of the crime as well as the defendant's active participation in it. The admission of the exhibits and the testimony was not error.

Finally, the defendant contends that the trial court erred in sentencing her to consecutive maximum terms of imprisonment. She contends that the sentences imposed were arbitrary and constituted an abuse of judicial discretion. She calls our attention to K.S.A. 21-4601 and K.S.A. 21-4606 which read as follows:

"This article shall be liberally construed to the end that persons convicted of crime shall be dealt with in accordance with their individual characteristics, circumstances, needs, and potentialities as revealed by case studies; that dangerous offenders shall be correctively treated in custody for long terms as needed; and that other offenders shall be dealt with by probation, suspended sentence, or fine whenever such disposition appears practicable and not detrimental to the needs of public safety and the welfare of the offender, or shall be committed for at least a minimum term within the limits provided by law." K.S.A. 21-4601.

"(1) In sentencing a person to prison, the court, having regard to the nature and circumstances of the crime and the history, character and condition of the defendant, shall fix the lowest minimum term which, in the opinion of said court, is consistent with the public safety, the needs of the defendant, and the seriousness of the defendant's crime.

"(2) The following factors, while not controlling, shall be considered by the court in fixing the minimum term of imprisonment:

"(a) The defendant's history of prior criminal activity;

"(b) The extent of the harm caused by the defendant's criminal conduct;

"(c) Whether the defendant intended that his criminal conduct would cause or threaten serious harm;

"(d) The degree of the defendant's provocation;

"(e) Whether there were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;

"(f) Whether the victim of the defendant's 'criminal conduct induced or facilitated its commission;

"(g) Whether the defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained." K.S.A. 21-4606.

The defendant relies upon the opinions of this court in *State v. Buckner,* 223 Kan. 138, 574 P.2d 918 (1977) and *State v. Coe,* 223 Kan. 153, 574 P.2d 929 (1977). In *Buckner,* we said:

"We are not unmindful of the longstanding rule in Kansas, as held repeatedly by this court, that a sentence which lies within the statutory limits as set forth by the legislature will not be disturbed on appeal in the absence of special circumstances showing an abuse of discretion. (*State v. Steward,* 219 Kan. 256, 547 P.2d 773.) We adhere to that rule and do not intend to overrule the numerous previous decisions which have so held.

. . . .

" 'The discretion lodged within a court is not a boundless, but a judicial, discretion. It is a discretion limited to sound judgment to be exercised, not arbitrarily, but with regard to what is right and equitable under the circumstances and the law.' (*State v. Collins,* 195 Kan. 695, 700, 408 P.2d 639.)

"This court, as well as others throughout the country, has become increasingly concerned with the disparity of sentences imposed by the various trial courts for comparable offenses. . . . This disparity exists not only among various states, but also judicial districts within the state and even among various judges within the same district. One of the recommended standards of the American Bar Association is:

" '2.3 (c) The sentencing judge should be required in every case to state his reasons for selecting the particular sentence imposed. Normally this should be done for the record . . .'

. . . .

"The legislature has dictated, in K.S.A. 21-4606, certain minimum factors to be considered in imposing sentence. Although the statute may not require it, we feel that when the sentence exceeds the minimum, it is better practice for the trial court to make, as part of the record, a detailed statement of the facts and factors considered by the court in imposing sentence. Such a record would be of great assistance to the appellate courts in determining whether the trial court has abused its discretion. 'Absent a statement of reasons, the record will not reveal whether the legislatively mandated factors have been considered.' " (pp. 150-151.)

The *Buckner* analysis has now been incorporated into our criminal code. See K.S.A. 1978 Supp. 21-4603(3), effective January 1, 1979.

The trial court, of course, did not have the benefit of our discussion in *Buckner,* nor did it have the legislative guidance now included in the statute last cited. However, the record before us does not indicate any of the reasoning of the trial judge; no reasons for the imposition of sentence were given at the time sentence was imposed, and the trial judge's thoughts were not expressed on the record at the time the motion for modification was denied. Sandra Goering had, so far as the record discloses, no prior criminal record of any consequence, and no record of participation in any violent crimes. Her codefendants, on the other hand, had extensive prior criminal records. Although the offenses are reprehensible, and we do not condone the actions of Sandra Goering, it appears that the sentences imposed upon her are out of all proportion to the sentence imposed upon her codefendant, Thach.

All three participants were indicted by a federal grand jury; defendant Goering was acquitted of conspiracy, but she was convicted of aiding and abetting bank robbery. 18 U.S.C.A. § 2 (a), § 2113(a). All were sentenced in the United States District Court to terms of imprisonment. All three were also charged in the District Court of Harvey County with violations of state law. Thach entered pleas of guilty and was sentenced to long terms of imprisonment, all to run *concurrently.* Keener was tried and convicted, but his conviction was reversed by this court on appeal for reasons not here material. *State v. Keener,* 224 Kan. 100, 577 P.2d 1182 (1978). Defendant Goering was sentenced to imprisonment for the following terms: life; 15 years to life; 3 to 10 years; 5 to 20 years; and 5 to 20 years. All of these terms were made consecutive to each other, and consecutive to her federal sentence.

Sandra Goering was not armed during the occurrences related above. She had no weapon. She fired no shots. Her sole activity was that as the driver of the getaway vehicle. The crime was severe, and defendant's participation therein cannot be excused, justified or condoned. The entire occurrence was reprehensible.

However, upon a review of the entire record, it is readily apparent that the conduct of Sandra Goering was the least culpable of the three participants. We can see no reasonable basis upon which the sentence imposed upon her should exceed by several times the sentence imposed upon Thach. We conclude that the sentence imposed is excessive.

The judgment of conviction is affirmed, but the sentence is vacated and the case is remanded to the trial court with directions that the defendant be re-sentenced in compliance with K.S.A. 21-4601 and 21-4606, and that such re-sentence shall be imposed by a different judge, to be appointed by this court.

McFARLAND, J., dissents from that portion of the opinion which directs the assignment of a different judge for re-sentencing.