No. 58,351

STATE OF KANSAS, *Appellee*, v. ROBERT EUGENE JONES, d/b/a JOHNSON COUNTY MOTORS, INC., *Appellant*.

(748 P.2d 839)

Opinion filed January 15, 1988.

*John Ivan,* of Shawnee Mission, argued the cause and was on the brief for appellant.

*Steven J. Obermeier,* assistant district attorney, argued the cause, and *Richard G. Guinn,* assistant district attorney, *Dennis W. Moore,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant appealed his conviction of impairing a security interest (K.S.A. 21-3734[1][c]), claiming that the statute is unconstitutionally vague, that the complaint was constitutionally insufficient, that evidence was improperly excluded, that evidence was improperly admitted, and that various other trial errors were committed by both the State and the judge. *Sua sponte* holding that K.S.A. 21-3734(1)(c) violates the prohibition against imprisonment for debt found in Section 16 of the Bill of Rights of the Kansas Constitution, the Court of Appeals reversed defendant's conviction. *State v. Jones*, 11 Kan. App. 2d 612, 731 P.2d 881 (1987). The State has exercised its statutory right to an appeal because the question as to the constitutionality of the statute arose for the first time as a result of the Court of Appeals decision. K.S.A. 1986 Supp. 60-2101(b). In a brief opinion, *State v. Jones*, 241 Kan. 627, 739 P.2d 933 (1987), this court unanimously held that K.S.A. 21-3734(1)(c) is not unconstitutional and reversed the Court of Appeals. In order that the other issues raised but not considered by the Court of Appeals could be determined, this case was set for further argument in September of 1987.

Jones was the sole stockholder, president, and operator of Johnson County Motors, Inc., (JoCo) a Yamaha motorcycle dealership. All of JoCo's motorcycles were ordered from Yamaha under a financing arrangement with the manufacturer, commonly referred to as floorplanning or, under the Uniform Commercial Code (UCC), K.S.A. 84-1-101 *et seq.*, as a consignment. Under the security agreement signed by Jones in his capacity as president of the corporation, Yamaha retained title to the goods until JoCo performed all obligations under the contract. The security agreement further provided that JoCo pay for each motorcycle as it was sold or, if not sold, make payments to Yamaha by a designated date in the invoice.

Despite JoCo's sales awards, the corporation experienced perpetual cash flow problems. For the five years prior to 1982, Yamaha permitted JoCo to defer forwarding proceeds from the sale of secured inventory, which allowed the cash generated by

sales to pay local operating expenses. At the end of each year, Jones would retire JoCo's debt to Yamaha by taking out personal loans locally. However, by the spring of 1982, JoCo's chronic undercapitalization, low cash flow, and a debt to Yamaha caused the collapse of the corporation.

In May of 1984, the State filed a criminal complaint charging that Jones "d/b/a Johnson County Motors, Inc.," had impaired a security interest by failing to account for proceeds of sales to a secured party. K.S.A. 21-3734(1)(c). The State claimed that Jones owed over $250,000 for motorcycles which were sold, but the proceeds were never forwarded to the manufacturer. Jones admitted that JoCo owed Yamaha about $150,000 under the floor plan when it went out of business, but denied any criminal intent to impair the security agreement. Jones was convicted by a jury and sentenced to a maximum term of two years and a minimum term of one year. K.S.A. 21-3734(1)(c).

Jones appealed his conviction to the Court of Appeals, raising numerous issues. Following oral argument, the Court of Appeals *sua sponte* questioned whether K.S.A. 21-3734(1)(c) violates Section 16 of the Bill of Rights of the Kansas Constitution, which states that "[n]o person shall be imprisoned for debt, except in cases of fraud." The parties were requested to brief this issue in accordance with the cautionary guidelines set forth in *State v. Puckett*, 230 Kan. 596, 601, 640 P.2d 1198 (1982). Subsequently, the Court of Appeals in *State v. Jones*, 11 Kan. App. 2d 612, 731 P.2d 881 (1987), held that, because K.S.A. 21-3734(1)(c) does not require proof of intent to defraud, the statute violates the prohibition against imprisonment for debt found in Section 16 of the Bill of Rights of the Kansas Constitution. The State appealed.

CONSTITUTIONALITY of K.S.A. 21-3734(1)(c)

Section 16 of the Bill of Rights of the Kansas Constitution prohibits the legislature from enacting a law which imposes imprisonment for the mere nonperformance of a contract of indebtedness. 11 Kan. App. 2d at 613, citing *Haglund v. Bank*, 100 Kan. 279, 284, 164 Pac. 167 (1917); *In re Wheeler, Petitioner*, 34 Kan. 96, 98, 8 Pac. 276 (1885).

K.S.A. 21-3734 provides in part:

"21-3734. Impairing a security interest.

(1) Impairing a security interest is:

(a) Damaging, destroying or concealing any personal property subject to a security interest with intent to defraud the secured party; or

(b) Selling, exchanging or otherwise disposing of any personal property subject to a security interest without the written consent of the secured party where such sale, exchange or other disposition is not authorized by the secured party under the terms of the security agreement; or

(c) Failure to account to the secured party for the proceeds of the sale, exchange or other disposition of any personal property subject to a security interest where such sale, exchange or other disposition is authorized and such accounting for proceeds is required by the secured party under the terms of the security agreement or otherwise."

After tracing the history of the statute, the Court of Appeals asserted that Section 16 of the Kansas Bill of Rights does permit imprisonment for debt when fraud is present because the offense then being punished is the fraud, not the indebtedness, citing *Tatlow v. Bacon*, 101 Kan. 26, 29, 165 Pac. 835 (1917). The court compared a similar worthless check statute, K.S.A. 1971 Supp. 21-3707, which was held not to be an unconstitutional authorization of imprisonment for a debt because that offense required proof of an intent to defraud (*State v. Haremza*, 213 Kan. 201, 209, 515 P.2d 1217 [1973]), to 21-3734(1)(c). The Court of Appeals then held that 21-3734(1)(c) is a penal statute which essentially describes a failure to meet a civil contract for indebtedness as a crime punishable by imprisonment and violates Section 16 because the crime does not require proof of an intent to defraud. 11 Kan. App. 2d at 615-16. We disagree.

As authority for its decision, the Court of Appeals adopted the reasoning of *State v. Hocutt*, 207 Neb. 689, 300 N.W.2d 198 (1981). We believe the Court of Appeals misinterpreted *Hocutt*.

In *Hocutt*, the defendant had been convicted of disposing of property subject to a security interest under a provision similar to K.S.A. 21-3734(1)(b). There, the defendant contended that the statute was unconstitutional since it provided for imprisonment for nonpayment of a debt without proof of fraud. The Nebraska court found that the statute may have violated the Nebraska state constitutional provision proscribing imprisonment for debt except in cases of fraud; however, as prior Nebraska case law had judicially engrafted the requirement of proof of intent to defraud onto the statute, the statute was not unconstitutional. The court

held that any legislation making it a crime for one to use *his own money* for any purpose other than payment of his debts is violative of state constitutional provisions prohibiting imprisonment for debt except in cases of fraud. 207 Neb. 689, Syl. ¶ 1. (Emphasis supplied.) The Court of Appeals application of *Hocutt* to create a "debt" under the security agreement is erroneous; JoCo used money belonging to another, not its "own money" for purposes other than the payment required under the security agreement.

The UCC became effective in Kansas on January 1, 1966. It was enacted to meet the contemporary needs of a modern commercial society. An agreement which produces a security interest under the UCC does not create a debt within the prohibition of Section 16 of the Bill of Rights of the Kansas Constitution. This becomes clear when the concept of a security interest is analyzed. Under K.S.A. 1986 Supp. 84-1-201(37), a security interest is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." K.S.A. 84-9-306(2) further provides that a security interest continues in the collateral notwithstanding sale and also continues in *all identifiable proceeds.* In addition, K.S.A. 84-9-306(1) defines proceeds as "whatever is received upon the sale, exchange, collection or other disposition of collateral or proceeds."

One of the most common types of security agreements allows the debtor to receive possession of the secured property and the creditor to retain title to the property until payment is received. Here, the floor plan arrangement between Yamaha and JoCo provided that JoCo would receive possession of the motorcycles and permission to sell them. Throughout the transaction, however, title to the motorcycles remained in the manufacturer and after a motorcycle was sold, the manufacturer's security interest continued in the proceeds JoCo received from the buyers less JoCo's profit. Therefore, notwithstanding the terms "debtor" and "creditor" used throughout the UCC, title remained in Yamaha and any unauthorized use or disposition of the secured property or proceeds by JoCo was a violation of K.S.A. 21-3734(1)(c).

Constitutional guarantees against imprisonment for debt have as their purpose the prevention of the useless and often cruel imprisonment of persons who, having honestly become indebted

to another, are unable to pay as they undertook and promised. The spirit of such a provision is to protect an honest debtor who is poor and has nothing with which to pay so that he should not be at the mercy of his creditors if his insolvency is bona fide, but it is not intended to shield a dishonest man who takes unconscionable advantage of another. 16A Am. Jur. 2d, Constitutional Law § 619, p. 569. When constitutional provisions proscribe imprisonment for debt, the "debt" is an obligation to pay money *from the debtor's own resources*. 16A C.J.S., Constitutional Law § 487. See *In re Marriage of Fithian*, 74 Cal. App. 3d 397, 141 Cal. Rptr. 506 (1977).

Our constitutional provision prohibits the imprisonment of an honest individual who becomes obligated to pay another person under an express or implied contract and is later unable to pay the debt from his own resources. Under the Kansas Constitution, imprisonment may result where a debtor intends to deprive a creditor of the creditor's own money. 21-3734(1)(c) does not violate the prohibition against imprisonment for debt found in Section 16 of the Bill of Rights of the Kansas Constitution.

The State additionally argues that, since the statute imposes imprisonment not for debt but for the willful act of depriving another party of his property, no specific intent to defraud is required. We agree. After the enactment of the UCC, sections of the criminal statutes were consolidated, rewritten, or added to complement its wording. One of the predecessor statutes of K.S.A. 21-3734(1)(a) and (b) was G.S. 1901, § 4259, which stated:

"[A]ny mortgagor of personal property or any other person who shall injure, destroy or conceal any mortgaged property, or any part thereof, with the intent to defraud the mortgagee, his executors, administrators, personal representatives, or assigns, or shall sell or dispose of the same without the written consent of the mortgagee, or his executors, administrators, personal representatives, or assigns, shall be deemed guilty of larceny . . . ."

In *State v. Miller*, 74 Kan. 667, 87 Pac. 723 (1906), G.S. 1901, § 4259 was analyzed and this court determined that, because the statute stated the sale of mortgaged property without the written consent of the mortgagee is a *larceny*, an individual convicted of violating that section must have had the larcenous intent to defraud the mortgagee. K.S.A. 58-3181 (Corrick), a successor statute of G.S. 1901, § 4259, was repealed in 1965 when legisla-

tive changes were made to conform to the UCC. Prior to 1965, all of the provisions describing conduct within a secured transaction as criminal included the element of intent to defraud. When K.S.A. 21-3734(1)(b) was adopted, the legislature removed all references to mortgaged property and larceny, inserted the phrase "personal property subject to a security interest," and thus omitted the necessity of proving an intent to defraud; subsection (1)(c) was added to prohibit the failure to account to the secured party when a sale is authorized.

K.S.A. 21-3734(1)(c) does not contain the requirement of a "criminal intent" to commit a crime. It states:

"(1) Impairing a security interest is:
. . . .
"(c) Failure to account to the secured party for the proceeds of the sale, exchange or other disposition of any personal property subject to a security interest where such sale, exchange or other disposition is authorized and such accounting for proceeds is required by the secured party under the terms of the security agreement or otherwise."

Under the common law, a crime consisted of two elements, an evil intention and an unlawful act (malum in se). Malum in se crimes usually fall into two classifications: (1) those such as theft and fraud, which require a specific intent to commit, and (2) offenses such as rape, which require no specific intent to commit the offense.

In Kansas, the right to define what act constitutes a crime and the punishment for the prohibited act is a legislative power, subject to the limitations imposed by our state and federal constitutions. The statutory distinction between a general intent crime and a crime of specific intent is whether, in addition to the general intent required by K.S.A. 21-3201 (a willful or wanton act), the statute identifies or requires a further particular intent, i.e., to harm, to permanently deprive, or to defraud. In addition to statutorily adopting the common-law crimes which require an evil intent, the legislature has the power to prohibit other acts which require no proof of criminal intent or knowledge; those acts are termed malum prohibitum.

When an act is prohibited and made punishable by statute, the statute is to be construed in the light of the common law. The existence of a criminal intent is regarded as essential even

though the terms of the statute do not require it, unless it clearly appears that the legislature intended to make the act criminal without regard to the intent with which it was done. Under the criminal code, for one to be found guilty of a violation of 21-3734, the legislature intended that the accused must have had a general criminal intent to commit the offense.

In 1969, the Kansas legislature passed the Criminal Code. K.S.A. 21-3101 *et seq.* Included in the code was K.S.A. 21-3201, which codified the prior common law and case law regarding criminal intent. K.S.A. 21-3201 states that criminal intent is a necessary element of every crime, unless specifically excepted. It further provides that the intent to commit a crime may be established by proof that the conduct of the accused person was willful. Willful conduct is conduct that is purposeful, intentional, and not accidental. The terms "knowing," "intentional," "purposeful," and "on purpose" are included within the term "willful." K.S.A. 21-3201.

When enacting K.S.A. 21-3734, the legislature intended that K.S.A. 21-3201 be construed in conjunction with all the criminal statutes unless specifically excepted. See *State v. Thompson*, 237 Kan. 562, 566-67, 701 P.2d 694 (1985). Therefore, to be guilty of impairing a security agreement, a debtor must intentionally fail to account to the secured party for the proceeds of the sale of the personal property subject to the security agreement. Here, both the defendant and the jury were informed of this requirement. The complaint charged that Jones "willfully" failed to account for the proceeds of the sale. The jury was instructed that the State had to prove that Jones had "intentionally failed to account for the proceeds of the sale or sales as specified in the security agreement."

In summary, the purpose of K.S.A. 21-3734 is to protect a secured party from an intentional unauthorized disposal of the secured property or proceeds by making it a crime to do so. *State v. Ferguson*, 221 Kan. 103, 107, 558 P.2d 1092 (1976). K.S.A. 21-3734(1)(c) does not punish for a *debt* in the form of a theft—it punishes for a *willful act to deprive a secured party of its property* and thus is not unconstitutional imprisonment for debt. Subsection (1)(a) of the statute covers damaging, concealing or exchanging the property with intent to defraud; subsection (1)(b)

covers intentionally selling the property without consent; and subsection (1)(c) covers the intentional failure to return the proceeds of sale of the secured property when such sale is authorized. In the case of subsection (1)(c), the proceeds do not represent a debt that the defendant failed to pay; rather, the proceeds represent the property itself. Thus, no section of the statute criminalizes the act of nonpayment of a debt. Instead, the statute makes it a crime to deal with property of another in an unauthorized manner.

Because we hold that K.S.A. 21-3734 does not authorize imprisonment for debt, but instead creates a separate and distinct offense, the decision of the Court of Appeals on this issue is reversed. We now turn to the other issues raised by Jones in his original appeal.

## SUFFICIENCY OF THE COMPLAINT

In a felony action, the indictment, complaint, or information is the jurisdictional instrument upon which the accused stands trial. A conviction based upon an information which does not sufficiently charge the offense for which the accused is convicted is void. Failure of the information to sufficiently state an offense is a fundamental defect which can be raised at any time, even on appeal. Sufficiency of the indictment or information is to be measured by whether it contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet, and by whether it is specific enough to make a plea of double jeopardy possible. *State v. Bird,* 238 Kan. 160, Syl ¶¶ 1, 2, 708 P.2d 946 (1985). If the facts alleged in an information do not constitute an offense within the meaning of the statute upon which it is based, the information is fatally defective. The evidence introduced at trial to show commission of the crime and the jury instructions have no bearing on this question. *State v. Jackson,* 239 Kan. 463, Syl. ¶ 3, 721 P.2d 232 (1986).

Jones was charged in the complaint as "Robert Eugene Jones d/b/a Johnson County Motors, Inc.," for feloniously and willfully failing to account to Yamaha for the proceeds of the sale of secured property. He contends that the abbreviation "d/b/a" used by the State in its charging documents stands for "doing business as" and has no legal significance; therefore, the com-

plaint does not state a crime. He also argues that the complaint is insufficient to hold him responsible as an individual who had assisted the corporation to commit a crime. We disagree.

In Kansas, an individual may not "do business as" a corporation. A corporation is an artificial being existing only in contemplation of law. *Land Grant Railway v. Comm'rs of Coffey County*, 6 Kan. 245 (1870). A corporation must be thought of without reference to members who compose the corporation. *Williams v. Railway Co.*, 68 Kan. 17, 26, 74 Pac. 600 (1903). Because a corporation is a distinct "person" under the the laws of this state, a corporation can be convicted of a criminal offense. See generally *State v. Railway Co.*, 96 Kan. 609, 612, 152 Pac. 777 (1915), *aff'd* 248 U.S. 276, 63 L. Ed. 239, 39 S. Ct. 93 (1919). Though Jones is an officer and the sole stockholder of the corporation, legally, he is neither the corporation nor can he be doing business as a corporation.

After the preliminary hearing Jones moved for dismissal of the complaint against him because K.S.A 21-3734 (1)(c) applies only to parties that signed the security agreement, *i.e.*, the two corporations. Jones admits that under K.S.A. 21-3207 he could be held responsible for any illegal act he performed in the name of the corporation if the State had made that allegation in its complaint.

The purpose of the complaint is twofold: (1) to disclose sufficient factual information to enable a magistrate to make an intelligent and impartial finding that there is probable cause to believe that a specific crime has been committed by the defendant and (2) to inform the defendant of the particular offense alleged to have been committed. Here, the complaint charging Jones contains the elements of the offense intended to be charged and sufficiently apprises Jones of what he must be prepared to meet. What was not included in the complaint was the theory of Jones' individual responsibility for the corporate crime.

When a complaint charges a crime, but fails to specify the particulars for which the individual is responsible sufficiently to enable the defendant to prepare a defense, the court may, on written motion of the defendant, require the prosecuting attorney to furnish the defendant with a bill of particulars. At the trial, the State's evidence shall be confined to the particulars of the

bill. K.S.A. 1986 Supp. 22-3201 (5). Defenses and objections based on defects in the institution of the prosecution or in the complaint other than that it fails to show jurisdiction in the court or to charge a crime may be raised only by motion before trial. K.S.A. 22-3208.

The record reflects that Jones was well aware of the theory of criminal responsibility upon which the State would rely at trial. Further, the record shows that he was neither surprised at trial nor deprived of his right to defend himself against that theory. At the hearing on the motion to dismiss, approximately two months prior to trial, the trial court clarified that the case would proceed on the theory of Jones' individual responsibility for corporate crime, K.S.A. 21-3207, and ruled that despite the lack of reference to K.S.A. 21-3207 in the complaint, defendant had received ample notice of the manner in which he was being charged through the briefs and record filed with the motion to dismiss. We agree.

The court noted that the complaint was not artfully drafted and should have charged, under K.S.A. 21-3207, that Jones was an individual acting for the corporation. The court then advised the State to consider amending the complaint to charge Jones with individual liability for the corporate crime. The State agreed that it was proceeding under K.S.A. 21-3207, but did not amend the complaint. Under these facts, the State's failure to amend the complaint to include the theory of criminal responsibilty of the defendant did not make the complaint insufficient.

Jones finally contends that Instruction No. 7 was improper because it allowed him to be convicted under two alternate theories when the complaint contained only one theory. We agree.

After the evidence had been submitted, Jones moved for acquittal arguing that he could not be held responsible for the acts of a corporation as charged. The State had attempted to charge in the complaint and proceeded to trial on the theory that Jones, as an individual, performed a criminal act on behalf of a corporation, and was individually responsible to Yamaha because the corporation failed to account to Yamaha for its portion of the proceeds from the sale of the secured property. Following the State's theory, the trial judge gave Instruction No. 6:

"INSTRUCTION NO. 6

"An individual who performs criminal acts, or causes criminal acts to be performed, in the name of or on behalf of a corporation, is responsible to the same extent as if such acts were performed in his own name or on his own behalf."

The trial court then reasoned that if there was not sufficient evidence to find Jones guilty for his acts on behalf of the corporation, there was evidence of one transaction where Jones personally made a sale and put the money in his pocket. Then the trial court enlarged the charge by informing the jury that Jones could be found guilty under two separate theories—either the State's theory found in Instruction No. 6 or the judge's theory found in Instruction No. 7, which stated:

"INSTRUCTION NO. 7

"The defendant is charged with the crime of impairing a security interest. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That Yamaha Motors Corporation had a security interest in motorcycles it had delivered to JoCo Motors, Inc.;

"2. That the defendant, on his own behalf or on behalf of JoCo Motors, Inc. sold or disposed of the motorcycles which were subject to the security interest and received the proceeds of such sale or disposition;

"3. That the security agreement made a provision that in the event of the sale or disposal of the motorcycles, the proceeds were to be given to Yamaha Motors Corporation;

"4. That the defendant, on his own behalf or in the name of or on behalf of JoCo Motors, Inc., intentionally failed to account for the proceeds of such sale or sales as specified in the security agreement;

"5. That the property subject to the security interest was at the time of the sale of the value of fifty dollars ($50.00) or more and was subject to a security interest of fifty dollars ($50.00) or more; and,

"6. That this act or acts occurred on or about the month of June, 1982, in Johnson County, Kansas."

The instruction allowed the jury to find Jones guilty of impairing a security agreement and intentionally failing to account for the proceeds of the sale to Yamaha either (1) as an individual acting on behalf of JoCo Motors, Inc., or (2) as an individual.

When pleading a crime that may be committed by several different methods in a single-count complaint or information, the State may charge the commission of the offense in any or all of the methods specified in the statute. Jones argues that prior to instructing the jury, both the State and the trial judge agreed he

was being tried as an individual who had performed an illegal act for the corporation. It was unfair for the judge to broaden the scope of the charge alleged in the information by adding an alternate theory in the jury instructions. By providing the alternate theory, the jury could convict Jones of a charge of which he had been unaware, thus depriving him of an adequate opportunity to prepare a defense.

When the information alleges one or more theories for commission of the crime, the general rule is that the instructions should be confined to the charges contained in the information and should not be broader or narrower than the information. Instructions given in violation of the rule, however, are excused when the substantial rights of the defendant have not been prejudiced. *State v. Turbeville*, 235 Kan. 993, 997, 686 P.2d 138 (1984).

A conviction upon a theory not made in the information or properly brought before the court is not a denial of due process under the Fourteenth Amendment of the Constitution of the United States unless the defendant is deprived of his right to defend himself against the charge. See *State v. Chatmon*, 234 Kan. 197, 205, 671 P.2d 531 (1983); U.S. Const., 6th Amend.; Kan. Const. Bill of Rights § 10; K.S.A. 22-3205. Under the facts of this case, Jones was denied his right to due process. Because of our holding on this issue, we do not reach any of the other issues raised.

Reversed and remanded for a new trial.

McFARLAND, J., concurring in part and dissenting in part: I dissent from that portion of the majority opinion which holds that it was reversible error for the district court to instruct the jury that the defendant could be guilty of the crime of impairing a security interest whether he acted as an individual or as a corporate officer when he failed to account to Yamaha for the proceeds of the sales. The majority correctly states that:

"Where a crime that may be committed by several different methods has been alleged in the complaint to have been committed by one of the methods specified by the statute, the trial judge is required to instruct the jury on the method as alleged by the State."

However, it is my belief that the majority has incorrectly applied

this statement of the law to the case at hand. A criminal statute such as that defining theft (K.S.A. 1986 Supp. 21-3701) has combined the previously separate crimes of larceny, embezzlement, and possession of stolen property into one offense that may be committed by the different means or methods set forth by statute. In each, the criminal acts necessary to complete the crime are quite different. Should the State, in essence, charge embezzlement as the method of theft and then seek instructions on both embezzlement and possession of stolen property, the majority's statement of law herein cited would be applicable.

In the case before us, different methods or means of committing the crime are not involved—only the *capacity* in which the defendant acted when doing the prohibited conduct of failing to account to the secured party is of import. In my opinion the matter should be handled in the same manner as is a principal versus aider and abettor situation.

In *State v. Smolin*, 221 Kan. 149, 557 P.2d 1241 (1976), we stated:

"Defendant first challenges her conviction because she was charged with aggravated battery but tried as having aided and abetted the principal, presumably Robert Berkowitz. She claims this practice failed to apprise her of the evidence she would be required to meet at trial and was prejudicial.

"By statute and case law this jurisdiction has long held that any person who counsels, aids or abets in the commission of any offense may be charged, tried and convicted in the same manner as if he were a principal. (K.S.A. 21-3205; *State v. Jackson*, 218 Kan. 491, 543 P.2d 901; *State v. Williams & Reynolds*, 217 Kan. 400, 536 P.2d 1395; *State v. Ingram*, 211 Kan. 587, 506 P.2d 1148; *State v. Campbell*, 210 Kan. 265, 500 P.2d 21; *State v. Ogden*, 210 Kan. 510, 502 P.2d 654; *State v. Edwards*, 209 Kan. 681, 498 P.2d 48; *State v. Ridge*, 208 Kan. 236, 491 P.2d 900; *State v. Sharp*, 202 Kan. 644, 451 P.2d 137; *State v. Jackson*, 201 Kan. 795, 443 P.2d 279, cert. denied, 394 U.S. 908, 22 L. Ed. 2d 219, 89 S. Ct. 1019.) Moreover, defendant's argument that she should have been charged in the information with aiding and abetting the aggravated battery rather than with the substantive offense has been rejected by this court. (*State v. Motor*, 220 Kan. 99, 102, 551 P.2d 783; *State v. Curtis*, 217 Kan. 717, 723, 538 P.2d 1383; *State v. Turner*, 193 Kan. 189, 392 P.2d 863.)" 221 Kan. at 152.

Likewise, in *State v. Pierson*, 222 Kan. 498, 565 P.2d 270, *cert. denied* 434 U.S. 868 (1977), we stated:

"The defendant's third point on the appeal is that the trial court erred in failing to discharge defendant because there was a variance in the proof. The defendant maintains that the state elected to proceed against defendant in the

information on the basis that he was a principal offender, while the evidence presented at the trial showed that the defendant was at most only an aider and abettor since he was not present at the time either of the robberies occurred. The defendant concludes that his conviction as an aider and abettor constituted a variance from the charge contained in the information and therefore his conviction should be set aside. This issue has been raised before this court on many occasions, most recently in *State v. Smolin,* 221 Kan. 149, 557 P.2d 1241, where we held that one who counsels, aids, or abets in the commission of any offense may be charged, tried, and convicted in the same manner as if he were a principal. We find no error in the refusal of the trial court to discharge the defendant because of a claimed variance in the proof." 222 Kan. at 503.

In *State v. Goering,* 225 Kan. 755, 594 P.2d 194 (1979), again, the defendant was charged as a principal and the elements instruction given as for a principal. The aiding and abetting instruction was also given. We held:

"Defendant next contends that the trial court erred in instructing the jury on aiding and abetting, since the defendant was charged only as a principal. . . ."

"We determined this issue adversely to appellant's contention in *State v. Smolin,* 221 Kan. 149, 557 P.2d 1241 (1976). We said:

" 'By statute and case law this jurisdiction has long held that any person who counsels, aids or abets in the commission of any offense may be charged, tried and convicted in the same manner as if he were a principal. . . . Moreover, defendant's argument that she should have been charged in the information with aiding and abetting the aggravated battery rather than with the substantive offense has been rejected by this court.' (p. 152.)

"In the case at hand, the defendant was properly charged as a principal, the evidence was sufficient to justify the instructions given, and the court properly instructed the jury on aiding and abetting." 225 Kan. at 758-59.

### K.S.A. 21-3205(1) provides:

"A person is criminally responsible for a crime committed by another if he intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime."

### K.S.A. 21-3207(1) provides:

"An individual who performs criminal acts, or causes such acts to be performed, in the name of or on behalf of a corporation is legally responsible to the same extent as if such acts were in his own name or on his own behalf."

K.S.A. 21-3206 (the only statute separating these two statutes in the statute book) provides for corporate criminal liability for acts committed by its agents when acting within the scope of their authority.

I see absolutely no reason to treat K.S.A. 21-3207 differently than K.S.A. 21-3205.

The majority opinion states:

"The instruction allowed the jury to find Jones guilty of impairing a security agreement and intentionally failing to account for the proceeds of the sale to Yamaha either (1) as an individual acting on behalf of JoCo Motors, Inc., or (2) as an individual."

How is this any different than being charged as a principal with an elements instruction based on being a principal and then instructing on aiding and abetting? The State is never required to elect between these theories. If there is evidence defendant acted as a principal and as an aider and abettor, the jury may convict without ever stating on which theory it found guilt.

As far as creating any problems for the defense in knowing what to defend against, the aiding and abetting situation creates many more problems. Let us assume that in an aggravated robbery case two masked men enter a home at gunpoint and rob the family residing there. The State proceeds on the theory defendant was one of the two principals (the robbers entering the home). Defendant prepares an alibi defense that he was 100 miles away at the time the crime was committed. At trial, a codefendant who has pled guilty testifies defendant was not one of the two actual robbers, but was the mastermind who planned the robbery, secured the guns used, and gave the robbers the layout of the home and the location of the valuables taken. Clearly, the defendant could be convicted whether the jury believed he was a principal or an aider and abettor.

In the case before us no such situation arises. Defendant is being charged with his own particular acts of failing to account—what hat he was wearing (corporate or personal) is the only area where K.S.A. 21-3207 comes into play and it nullifies any distinction. As the majority opinion correctly notes:

"The purpose of the complaint is twofold: (1) to disclose sufficient factual information to enable a magistrate to make an intelligent and impartial finding that there is probable cause to believe that a specific crime has been committed by the defendant and (2) to inform the defendant of the particular offense alleged to have been committed. Here, the complaint charging Jones contains the elements of the offense intended to be charged and sufficiently apprises Jones of what he must be prepared to meet. What was not included in the complaint was the theory of Jones' individual responsibility for the corporate crime.

"When a complaint charges a crime but fails to specify the particulars for

which the individual is responsible sufficiently to enable the defendant to prepare a defense, the court may, on written motion of the defendant, require the prosecuting attorney to furnish the defendant with a bill of particulars. At the trial, the State's evidence shall be confined to the particulars of the bill. K.S.A. 1986 Supp. 22-3201(5). Defenses and objections based on defects in the institution of the prosecution or in the complaint other than that it fails to show jurisdiction in the court or to charge a crime may be raised only by motion before trial. K.S.A. 22-3208.

"The record reflects that Jones was well aware of the theory of criminal responsibility upon which the State would rely at trial. Further, the record shows that he was neither surprised at trial nor deprived of his right to defend himself against that theory. At the hearing on the motion to dismiss, approximately two months prior to trial, the trial court clarified that the case would proceed on the theory of Jones' individual responsibility for corporate crime, K.S.A. 21-3207, and ruled that despite the lack of reference to K.S.A. 21-3207 in the complaint, defendant had received ample notice of the manner in which he was being charged through the briefs and record filed with the motion to dismiss. We agree."

I would treat K.S.A. 21-3207 in the same manner as the aiding and abetting concept is handled and affirm the conviction.